UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GAIL D. FINK, Derivatively on Behalf of Nominal
Defendant Citigroup, Inc.,

    Plaintiff,

 -v-               No. 02 Civ. 10250 (LTS)(RLE)

SANFORD I. WEILL, STANLEY FISCHER,
ROBERT E. RUBIN, MICHAEL TERRY MASIN
FRANKLIN A. THOMAS, JOHN M. DEUTSCH,
GEORGE DAVID, ANN DIBBLE JORDAN,
ARTHUR ZANKEL, DUDLEY C. MECUM, II,
REUBEN MARK, ALAIN J. P. BELDA, KENNETH T. DERR,
ROBERTO HERNANDEZ RAMIREZ, ALFREDO HARP
HELU, ANDRALL E. PEARSON, C. MICHAEL ARMSTRONG
RICHARD D. PARSONS,

    Defendants,

 and

CITIGROUP, INC.,

    Nominal Defendant.

OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| SCOTT & SCOTT, LLC<br>  By: David R. Scott, Esq.<br>108 Norwich Avenue<br>Colchester, CT 06415<br><br>LASKY & RIFKIND, Ltd.<br>  By: Leigh Lasky, Esq.<br>100 Park Avenue<br>New York, NY 10017<br><br>*Attorneys for Plainitff* | CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>  By: Mitchell A. Lowenthal, Esq.<br>      Carmine D. Boccuzzi, Esq.<br>      Tanisha L. Massie, Esq.<br>One Liberty Plaza<br>New York, NY 10006<br><br>*Attorneys for Defendants*<br><br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON<br>  By: Richard A. Rosen, Esq.<br>1285 Avenue of the Americas<br>New York, NY 10019<br><br>*Attorney for Nominal Defendant* |

LAURA TAYLOR SWAIN, United States District Judge

Gail D. Fink ("Fink" or "Plaintiff"), a Citigroup, Inc. ("Citigroup") shareholder, brings this derivative action on behalf of Citigroup against directors of Citigroup ("Defendants") alleging a violation of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), breach of fiduciary duty, gross mismanagement, and waste of corporate assets. Plaintiff alleges that the defendant Citigroup directors caused injury to Citigroup's stock, goodwill, and reputation by allowing the company to engage in a series of unlawful or fraudulent transactions with Enron Corporation ("Enron"), Dynegy Inc. ("Dynegy"), Adelphia Communications Corporation, ("Adelphia"), AT&T Corporation ("AT&T"), and Worldcom Inc. ("Worldcom"), all companies which ultimately experienced severe financial difficulties. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(1), 28 U.S.C. § 1367, and 15 U.S.C. § 78a.

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint[1] for failure to state a claim. Plaintiff has moved for leave to file a Third Amended Complaint,[2] which Defendants oppose. The Court has considered thoroughly the arguments and submissions of the parties in connection with these motions. For the reasons that follow, Defendants' motion to dismiss the Complaint is granted, and Plaintiff's motion to file a Third Amended Complaint is denied.

---

[1] All citations to the Complaint herein refer to the Amended Complaint, filed June 2, 2003.

[2] Plaintiff filed a motion for leave to file a Second Amended Complaint on November 26, 2003, but then abandoned that motion in favor of the instant motion, filed on July 6, 2004, for leave to file a Third Amended Complaint.

BACKGROUND

The following summary of material facts takes as true Plaintiff's allegations and undisputed factual assertions, but does not in any way constitute factual findings by the Court. Plaintiff Gail D. Fink is a shareholder of Citigroup. (Compl. ¶ 20.) Nominal Defendant Citigroup, Inc. is a financial services institution that provides a range of banking and investment services to consumer and corporate customers through its various subsidiaries and divisions. (Id. ¶ 21.) Defendants, directors of Citigroup, are named as follows: Sanford I. Weill ("Weill"), Chairman of the Board and Chief Executive Officer; Robert E. Rubin ("Rubin"); Stanley Fischer ("Fischer"); Franklin A. Thomas ("Thomas"); Dudley C. Mecum II ("Mecum"); Arthur Zankel ("Zankel"); Reuben Mark ("Mark"); Kenneth T. Derr ("Derr"); Richard D. Parsons ("Parsons"); Michael Terry Masin ("Masin"); Ann Dibble Jordan ("Jordan"); Andrall E. Pearson ("Pearson"); John M. Deutch ("Deutch"); Alain J.P. Belda ("Belda"); C. Michael Armstrong ("Armstrong"); George David ("David"); Alfredo Harp Helu ("Helu"); and Roberto Hernandez Ramirez ("Ramirez"). (Id. ¶¶ 25-42.)

Citigroup engaged in an extensive series of unlawful and fraudulent transactions, principally with Enron, and additionally with Dynegy, Adelphia, Worldcom, and AT&T.[3] Plaintiff alleges that, as a result of their positions as directors of Citigroup, Defendants knew or should have known about the risky and fraudulent nature of the transactions that ultimately damaged Citigroup financially and also caused injury to Citigroup's reputation and goodwill. In

---

[3] The instant matter raises issues with regard to the same underlying transactions as those recently addressed by this Court in connection with a securities fraud class action. See In re Citigroup, 330 F. Supp. 2d 367 (S.D.N.Y. 2004).

their capacity as directors, Defendants signed Citigroup's Form 10-K, filed with the Securities Exchange Commission during the relevant period,[4] and several of the Defendants also signed an accompanying Management Report submitted with the Form 10-K. (Id. ¶¶ 65, 216.) Some of the Defendants also served on committees within the Citigroup corporate structure, including the Audit Committee, the Public Affairs Committee, and the Executive Committee. (Id. ¶¶ 65, 70-80, 216.)

Citigroup had in place an internal risk management system, which purported to involve committees of the board of directors. (Id. ¶ 61 (quoting Citigroup's 2001 Report on Form 10-K, filed March 12, 2002)); see also id. ¶ 65 (quoting Citigroup's 1998 Report on Form 10-K, filed March 8, 1999)). In July 2000, Defendant Weill discussed the success of the risk management policies, stating publicly, "'Our outstanding results for the quarter demonstrate the impact of our market share gains around the world, the consistent growth of our consumer businesses, *the company's discipline in managing risk* and our continued investment in our future.'" (Id. ¶ 67) (emphasis in Compl.). In October 2000, Weill further stated, "'*Our continued management discipline*, business diversification, and geographic reach *enable us to deliver consistently strong results for our shareholders*.'" (Id. ¶ 68) (emphasis in Compl.).

The Complaint alleges that, on various occasions, certain Defendants were complicit in carrying out fraudulent transactions. For example, Defendant Weill allegedly encouraged Salomon Smith Barney stock analyst Jack Grubman to review and improve AT&T's

---

[4] The Complaint does not explicitly define the relevant period, but Plaintiff cites Forms 10-K filed from 1999 through 2002, which is also the time frame addressed by the parties' briefing. (Compl. ¶¶ 62-63.)

stock rating in order to curry favor with Defendant Armstrong, the Chief Executive Officer of AT&T. (Id. ¶¶ 144-47.) Defendant Rubin allegedly pressured Moody's Investors Service to maintain Enron's investment grade credit rating so that Dynegy would be encouraged to complete its acquisition of Enron, thereby allowing Defendants to continue to hide their earlier fraudulent transactions with Enron. (Id. ¶ 179.) Plaintiff further alleges that the proxy statement used by Citigroup in connection with the annual elections of directors during the relevant period included false and misleading statements insofar as such proxy documents did not discuss Citigroup's risky transactions with Enron and other companies. (Id. ¶ 246.)

Despite these concerns about the manner in which Citigroup was conducting its business, Plaintiff did not make a demand on the board of directors because, she alleges, any demand for corrective action would have been futile given the directors' self-interest and influence over each other. (Id. ¶ 216.) The Complaint details a number of alleged current and prior professional and social connections among certain of the Defendants, including that they had numerous business dealings with each other, sat on the boards of other corporations together, were business partners, and were acquainted in various social and political settings. (Id. ¶ 217.) The Complaint does not, however, explain how these connections would likely impede the board members' ability to assess independently a demand for corrective action herein.

Plaintiff brings this derivative action on behalf of Citigroup, asserting that Defendants violated section 14(a) of the Securities Exchange Act with regard to the proxy statements for the annual elections of directors, and that Defendants breached their fiduciary duties, engaged in gross mismanagement, and wasted corporate assets. Defendants move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff

has failed to state a claim for relief under section 14(a) of the Securities Exchange Act, and that Plaintiff's derivative claims must fail because she neither made a demand on the board of directors nor established that such demand would be futile.

DISCUSSION

Derivative and Demand Requirement Claims

Plaintiff asserts claims against the Defendants on Citigroup's behalf, alleging that Defendants violated section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder, breached their fiduciary duties, engaged in waste of corporate assets, and committed gross mismanagement. It is a long held principle of corporate law that directors manage the business of the corporation. Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, (Del. 2000). Where a shareholder brings a derivative lawsuit on behalf of the corporation against the directors based on their actions or failure to act, there is a threshold question of standing as to whether the shareholder has exhausted intracorporate remedies, namely whether the shareholder has made a demand on the board of directors. Fed. R. Civ. P. 23.1; accord Del. Ch. Ct. R. 23.1. Federal Rule of Civil Procedure 23.1 provides that the "complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort. Id.; accord Del. Ch. Ct. R. 23.1. Because Rule 23.1 requires that Plaintiff make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6). In re Trump Hotels S'holder Derivative Litig., Nos. 96

Civ. 7820 DAB, 96 Civ. 8527 DAB, 2000 WL 1371317, at *6 (S.D.N.Y. Sept. 21, 2000).

In the instant matter, Plaintiff Fink concedes that she did not make a demand on the Citigroup Director-Defendants. (Compl. ¶ 216.) Her standing to bring this lawsuit therefore turns on the question of demand futility.[5] Plaintiff essentially alleges that, throughout Citigroup's unlawful and fraudulent dealings with Enron and other companies, Defendants failed to take action to prevent such transactions. (Compl. ¶¶ 216, 222, 228, 233, 238.) Because Plaintiff accuses Defendants of failing to act, the Court applies the test for demand futility as set forth in Rales v. Blasband, 634 A.2d 927 (Del. 1993). See Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995) (applying Rales where directors accused of failing to prevent misrepresentations). Under the Rales standard, Plaintiff must provide particularized allegations that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales, 634 A.2d at 934.[6]

---

[5] The Court evaluates demand futility according to the law of the state in which the company is incorporated, and therefore applies Delaware state law here. In re Trump Hotels S'holder Derivative Litig., 2000 WL 1371317, at *6 (citing Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991)).

[6] Plaintiff argues for application of the less stringent, disjunctive test enunciated by the Delaware Supreme Court in Aronson v. Lewis, 473 A.2d 805 (1984). That test applies where a decision or action of the board is being challenged and requires that a plaintiff seeking to be excused from the demand requirement show facts demonstrating reasonable doubt that "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Rales, 634 A.2d at 933 (quoting Aronson, 473 A.2d at 814.) "The essential predicate for the Aronson test is the fact that a *decision* of the board of directors is being challenged in the derivative suit." Rales 634 A.2d at 933 (emphasis in original). Here, Plaintiff's complaint is that Citigroup's directors knew or should have known of the illegitimate corporate transactions and did nothing to stop them.

A director is considered to be interested where the director is positioned to receive a personal financial benefit from a transaction that would not be equally shared by the corporation or shareholders or where a transaction would be materially detrimental to the director but not to the corporation or shareholders. Id. at 936. Plaintiff does not allege anywhere in the Complaint that the Director-Defendants stood to receive a personal financial benefit from the Enron and other transactions or that they were in danger of being injured by such transactions. Instead, Plaintiff lists Defendants' business associations with each other, specifically stating that they are friends, and in some cases, business partners. (Compl. ¶ 217.) The Complaint does not, however, include any allegations as to how the connections would likely impede the board members' ability to assess independently a demand for corrective action as to the matters

---

The facts alleged by Plaintiff in the instant case are distinguishable from those found in In re Abbott Laboratories Derivative Shareholders Litigation, 325 F.3d 795 (7th Cir. 2003), a case cited by Plaintiff in support of her argument for use of the Aronson test. In Abbott Laboratories, the plaintiffs alleged specific facts and circumstances indicating that the board had knowledge of uncorrected long-term legal violations and had decided that no action was required. Id. at 806. These facts included notices of violations and warning letters sent directly to board members by a government agency, a board committee's awareness of the violations, and board signatures on annual SEC forms that specifically noted the relevant government regulatory issues; the Abbott Laboratories plaintiff further alleged specifically that the directors were aware of the violations. Id. Plaintiff's Complaint in the instant action contains much less detail regarding Citigroup's alleged participation in the Enron and other allegedly illegitimate transactions. Plaintiff proffers generalized allegations that the defendant board members "and/or senior managers of [Citigroup]" participated in those activities, and equally generalized allegations of knowledge (e.g., Complaint at ¶ 47("defendant Weill and the other defendants knew of or were reckless or negligent in disregarding the wrongful conduct complained of herein."). Aronson is clearly inapposite to the inaction claim as pled in the instant case. Furthermore, even if the Complaint in this case could be construed to allege Abbott Laboratories - type knowledge and board decision making, the allegations of the Complaint fail to satisfy the particularization requirement of Rule 23.1 as to the board members, and thus Plaintiff would still fail to meet her burden under Aronson.

complained of here. Such generalized allegations of connections are not sufficient to create reasonable doubt that a majority of the board is disinterested. Beam v. Stewart, 845 A.2d 1040, 1050 (Del. 2004) ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence.") Moreover, as the Rales court stated, "[t]o establish a lack of independence, [Plaintiff] must show that the directors are 'beholden' to [the other stockholders] or so under their influence that their discretion would be sterilized." Rales, 634 A.2d at 936. Other than a conclusory assertion that defendant Weill "exercised substantial influence over the other Individual Defendants,"[7] the Complaint is devoid of such allegations. The conclusory allegation as to Weill's influence is plainly insufficient to meet the particularization requirement of Rule 23.1 and Rales' requirement that the facts pled be sufficient to create reasonable doubt as to whether the board was disinterested at the time the litigation was initiated.

Plaintiff further argues that demand should be excused because making a demand on the board would require the directors to sue themselves. (Compl. ¶ 219.) Simply naming directors as defendants, however, is not a sufficient basis on which to claim demand futility. Scopas Tech. Co. v. Lord, No. 7559, 1984 WL 8266, at *4 (Del. Ch. Nov. 20, 1984). In addition, the mere threat of personal liability does not create a reasonable doubt as to the director's disinterestedness or independence. Aronson, 473 A.2d at 815; see also In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995) (court could not conclude that there was substantial likelihood of liability which would disable board from considering demand fairly unless claim was pled with sufficient particularity). Plaintiff does not plead her position with the

---

[7] Compl. ¶ 216(e).

requisite factual particularity here; rather, the Complaint asserts only generally that any liability insurance would not cover derivative claims if the directors were to be sued. (Compl. ¶ 221.)

Plaintiff argues that Defendants' failure to prevent the alleged unlawful and fraudulent transactions with Enron and other companies was such a "gross abdication of their directorial duties" that such inaction alone creates a reasonable doubt as to Defendants' disinterestedness and independence. (Pltf Mem. of Law, at 14-15.) With the exception of isolated and insufficient allegations regarding Defendants Weill and Rubin, Plaintiff fails entirely to proffer particularized allegations of any of the Defendants' knowledge of or involvement in any of these transactions. Plaintiff's allegations are entirely conclusory. The only involvement of Defendants that Plaintiff cites with any specificity is with regard to Defendant Weill, alleging that he made affirmative statements as to the effectiveness of Citigroup's risk management policies (Compl. ¶ 67) and that Jack Grubman reported to Weill regarding the upgrade of AT&T stock (Id. ¶ 144), and, with regard to Defendant Rubin, that Rubin contacted Moody's Investors Service to maintain Enron's investment grade credit rating. Those allegations are clearly insufficient to create a reasonable doubt as to the disinterestedness or independence of a majority of Citigroup's board of directors.

Plaintiff has not alleged facts sufficient to support any reasonable doubt as to the disinterestedness or independence of the board of directors. Plaintiff's derivative claims must therefore be dismissed for failure to satisfy the demand requirement.

Section 14(a) Claim

Plaintiff's securities law claim must be dismissed for the further reason that, to the

extent it can be construed as a direct, rather than derivative claim, it fails to state a claim upon which relief may be granted. In deciding a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must accept as true the material facts alleged by the plaintiff and draw all reasonable inferences in the plaintiff's favor. Grandon v. Merrill Lynch, 147 F.3d 184, 188 (2d Cir. 1998). The court must not dismiss the complaint unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). However, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted).

Section 14(a) of the Securities Exchange Act provides that "[i]t shall be unlawful for any person . . . in contravention of such rules and regulations as the [SEC] may prescribe . . . to solicit . . . any proxy or consent or authorization in respect of any security . . . registered pursuant to . . . this title." 15 U.S.C.A. § 78n(a) (West 1997). Rule 14a-9(a) promulgated thereunder provides that:

> No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . .

17 C.F.R. § 240.14a-9(a) (2005).

Plaintiff alleges that Defendants "participated in the issuance of materially false and misleading written statements to shareholders" which were contained in proxy statements

that failed to disclose information regarding Citigroup's transactions with Enron, Dynegy, Worldcom, Adelphia, and AT&T. (Compl. ¶ 245.)

The Second Circuit has held "that no general cause of action lies under § 14(a) to remedy a simple breach of fiduciary duty." Koppel v. 4987 Corp., 167 F.3d 125, 133-34 (2d Cir. 1999); accord Field v. Trump, 850 F.2d 938, 947 (2d Cir. 1988) (quoting Maldonado v. Flynn, 597 F.2d 789, 796 (2d Cir. 1979)) (Section 14(a) cannot serve as "an avenue for access to the federal courts in order to redress alleged mismanagement or breach of fiduciary duty."). Plaintiff's section 14(a) claim fails because the wrongs flowing from the allegedly false and misleading disclosure are improper governance and injury resulting from the undisclosed transactions, rather than from any particular action taken by shareholders on the basis of the proxy statements.

Moreover, Plaintiff does not specify the type of relief she seeks as to her section 14(a) claim. To the extent she seeks equitable relief, her claim is moot because, while the Amended Complaint covers the period from 1999 to 2002, a new board of directors was elected in April 2003, after Citigroup's dealings with Enron and other companies had been disclosed.[8] Plaintiff argues that, had shareholders known of the Citigroup transactions discussed in the Amended Complaint, the shareholders would not have re-elected the Director-Defendants. (Pltf's Mem. of Law in Opp'n to Mot. to Dismiss, at 8-9.) The post-disclosure facts do not, however, provide any support for her prognostication. Fourteen of the eighteen Director-

---

[8] Plaintiff's counsel essentially conceded at oral argument that it would be impossible for the Court to provide equitable relief for a past election. (Tr. of Oral Arg. 16:22-18:11.)

Defendants were re-elected in April 2003.[9] (Defts' Mot. to Dismiss, Ex. O). Because a new board has already been elected, and in the absence of a viable claim for monetary damages or other operative relief for financial losses caused by the challenged director election, the only remedy the Court could provide in respect of this claim would be declaratory relief. Where any potential remedy is merely declaratory, a section 14(a) claim must be dismissed unless such a declaration might prevent behavior that could predictably be repeated again. Browning Debenture Holders' Cmte. v. DASA Corp., 524 F.2d 811, 816-17 (2d Cir. 1975). Plaintiff's section 14(a) claim, which is predicated on non-disclosure of a particular set of relationships and transactions, is therefore dismissed.

Motion for Leave to File a Third Amended Complaint

Subsequent to the briefing on the motion to dismiss the First Amended Complaint, Plaintiff has twice requested leave to file another amended complaint. Her proposed Third Amended Complaint is now before the Court.[10] Federal Rule of Civil Procedure 15 provides that leave to file "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

---

[9] Because the composition of Citigroup's board of directors is public information not subject to reasonable dispute, the Court takes judicial notice of the individuals elected to the 2003 board of directors. Fed. R. Ev. 201(b)(2) (Court may take judicial notice of any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); see also Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) (court may take judicial notice of matters of public record); Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

[10] As noted above, Plaintiff withdrew a motion to file a proposed Second Amended Complaint when she tendered the proposed Third Amended Complaint.

Leave need not be granted, however, where the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). Plaintiff's proposed Third Amended Complaint adds further detail, drawn largely from published third-party reports, concerning Citigroup's alleged culpability in connection with the Enron and other transactions cited in the Complaint, but makes no changes that would cure the particularization and other defects identified in the motion practice and discussed above. Nor is Citigroup's settlement of certain Enron-related claims, an event cited by Plaintiff in post-briefing correspondence, indicative that opportunity to amend further would result in a pleading that demonstrates with the requisite particularization of the futility of a board demand or a pleading that states a viable section 14(a) claim. Accordingly, Plaintiff's motion for leave to file a further Amended Complaint is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint for failure to comply with Federal Rule of Civil Procedure 23.1 is granted. Plaintiff's section 14(a) claim is also dismissed with prejudice pursuant to Rule 12(b)(6). Plaintiff's motion for leave to file a further Amended Complaint is denied. The Clerk of Court is hereby respectfully requested to close this case.

Dated: New York, New York
September 15, 2005

LAURA TAYLOR SWAIN
United States District Judge